# EXHIBIT A

| Approved, SCAO | Original - Court<br>1st Copy- Defendant | 2nd Copy - Plaintiff<br>3rd Copy -Return |
|---|---|---|

| STATE OF MICHIGAN<br>THIRD JUDICIAL CIRCUIT<br>WAYNE COUNTY | SUMMONS | CASE NO.<br>22-011580-NF<br>Hon. Edward Ewell, Jr. |
|---|---|---|

Court address : 2 Woodward Ave., Detroit MI 48226    Court telephone no.: 313-224-5195

**Plaintiff's name(s), address(es), and telephone no(s)**
Ameristaff, Inc. d/b/a Ameristaff Nursing Services

v

**Defendant's name(s), address(es), and telephone no(s).**
State Farm Mutual Automobile Insurance Company

**Plaintiff's attorney, bar no., address, and telephone no**

Michael R. Dorfman 60955
1938 Woodslee Dr
Troy, MI 48083-2235

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court,

where it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer pending.

Summons section completed by court clerk.    **SUMMONS**

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>9/29/2022 | Expiration date*<br>12/29/2022 | Court clerk<br>Tamika Wright-Evans |
|---|---|---|

Cathy M. Garrett- Wayne County Clerk.

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01 (9/19)    **SUMMONS**    MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105



22-011580-NF FILED IN MY OFFICE Cathy M. Garrett WAYNE COUNTY CLERK 9/29/2022 3:02 PM Tamika Wright-Evans

STATE OF MICHIGAN

IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

| | |
|---|---|
| AMERISTAFF, INC., d/b/a<br>AMERISTAFF NURSING SERVICES<br>(Patient D.S.) | Case No. _____-NF<br>Honorable: |
| Plaintiff, | |
| v | |
| STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY | |
| Defendant. | |

**MICHAEL R. DORFMAN (P60955)**
Attorney for Plaintiff
1938 Woodslee Drive
Troy, Michigan 48083
(248) 619-3681
*mdorfman@americaremedical.com*

## COMPLAINT

THERE IS CURRENTLY NO OTHER CIVIL ACTION ARISING OUT OF THE SAME TRANSACTION OR OCCURRENCE AS ALLEGED IN THIS COMPLAINT CURRENTLY PENDING OR PREVIOUSLY FILED WITH THE COURT.

**NOW COMES** Plaintiff AMERISTAFF, INC. d/b/a AMERISTAFF NURSING SERVICES, by and through its counsel Michael R. Dorfman, and for its Complaint against Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff AMERISTAFF, INC., d/b/a AMERISTAFF NURSING SERVICES, (hereinafter "AmeriStaff" or "Plaintiff") is a Michigan corporation licensed to do and conducting a substantial part of its business in Southeast Michigan, including the County of Wayne.

2. Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (hereinafter "Defendant" or "State Farm") is a Michigan property and casualty insurer, and was at all times duly authorized to do business in the State of Michigan, and is doing business in the County of Wayne, State of Michigan.

3. The amount in controversy is within the jurisdiction of this Court.

4. Venue is appropriate in this Court as well.

## GENERAL ALLEGATIONS

### The Parties

5. AmeriStaff is a community healthcare organization that provides both in-home private duty nursing services and community living supports/home health aides as well as speech and occupational therapy.

6. *Inter alia*, AmeriStaff provides the aforementioned in-home health care services to individuals who have suffered catastrophic injuries, such as motor vehicle accidents.

7. AmeriStaff has been in business for over thirty-five (35) years and is nationally accredited through Community Health Accreditation Program ("CHAP").

8. AmeriStaff serves patients from a diverse set of payor sources, including both private and public funders.

2

9. AmeriStaff's in-home health care staff include, but are not limited to, registered nurses, licensed practical nurses, certified nurse aides, home health aides, physical therapists, and occupational therapists.

10. Defendant State Farm provides no-fault automobile insurance to residents of the State of Michigan, including AmeriStaff's patient and State Farm's insured, Patient D.S.

11. AmeriStaff, and its sister companies, have approximately 70 patients currently in its patient population whose insurance payor is a No-Fault Insurer.

**AmeriStaff's In-Home Health Care Services for Patient D.S.**

12. That on October 3, 1990, in Wayne County, State of Michigan, Patient D.S. was involved in a motor vehicle accident (the "Accident" or "MVA") in which she sustained bodily injuries within the meaning of the Defendant's policy and the statutory provision MCL § 500.3105.

13. Patient D.S.'s Accident injuries include, but are not limited to, TBI and above knee amputation.

**STATE FARM's Failure to Pay for Services Provided by AmeriStaff to Patient C.K.**

14. That on the date of the Accident, Patient D.S. was an insured of the Defendant, STATE FARM, under the provisions of an automobile insurance policy issued by Defendant that was in effect in accordance with the provisions of the No-Fault Act, MCL § 500.3101, *et seq.*, and for which all applicable premiums were paid. Under the terms and conditions of the automobile insurance policy, the Defendant, STATE FARM, became obligated to pay to or on behalf of Patient C.K., the reasonable and necessary medical expenses incurred for her care, recovery or rehabilitation for the bodily injuries she sustained in the motor vehicle accident of October 03, 1990.

15. Despite regularly receiving monthly invoices and supporting documentation from AmeriStaff, STATE FARM failed to fully reimburse AmeriStaff for the care and services it provided to Patient D.S.

16. Patient D.S. has been a patient of AmeriStaff's since September 21, 2015.

17. STATE FARM paid AmeriStaff in full for its services until approximately July of 2021.

18. For services provided on or after April of 2022, STATE FARM suddenly paid only a portion of AmeriStaff's bills.

19. Sometimes submitted bills were not paid at all.

20. These reductions were made assumedly pursuant to the amended Section 3157(7) of the No-Fault Act, which will be explained below.

21. ==Thus, the total amount owed as of the filing of this complaint is **$90,984.76**, exclusive of penalty interest and attorney fees.==

### Amended No-Fault Statute & Fee Schedule

22. The Michigan No-Fault Automobile Insurance Act (the "No-Fault Act) underwent numerous revisions in 2019, effective June 11, 2019.

23. Chief among those revisions was a complete overhaul of Section 3157 of the No-Fault Act, which governs a medical provider's reimbursement for services it renders to a patient who was injured in an automobile accident.

### Prior Version of the No-Fault Act's Rate Section

24. Under the prior version of the No-Fault Act, a medical provider's rate was reimbursable as long as it was "reasonable and customary" but there was no pre-determined amount nor was there a set limit or cap.

4

25. In full, the prior version of Section 3157 provided:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, ***may charge a reasonable amount*** for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution ***customarily*** charges for like products, services and accommodations in cases not involving insurance. MCL 300.3157 (Emphasis added)

26. Under the prior statute, "reasonable" has been interpreted to mean that a provider could charge a rate that was based upon its overhead and the general cost of doing business, as well as the general going rate in the marketplace for similar services.

27. The word "customary" means that a provider was supposed to charge the same amount for its services, regardless of who was paying.

28. AmeriStaff has been in business for more than thirty (30) years, and the rates that it charges have been found reasonable and in line with what others charge in the marketplace for similar services.

29. However, in 2019 (effective July 1, 2021), the Michigan Legislature overhauled the No-Fault Act and amended Section 3157 to adopt a "fee schedule" for medical providers using the Medicare fee reimbursement schedule.

30. The fee schedule set forth in Section 3157 functions as a "ceiling" and limits the amount of money a medical provider can be reimbursed for No-Fault patients (i.e., patients injured in automobile accidents).

31. Section 3157 is a legislative price control measure.

32. The intent behind the fee schedule was purely cost control; it was designed to decrease the amount of reimbursements owed to medical providers, which would theoretically permit insurance companies to offer automobile insurance at a reduced rate.

5

33. It is well-known that in-home services were specifically targeted as an area where cost-control measures were going to be focused.

34. The revised rate section is significantly longer than that of the single paragraph in the old version of Section 3157; the old version was a mere 74 words and the new version is 2,019 words.

35. Governor Whitmer admitted that there were flaws with the bill and that it needed additional work but that those changes would come prior to the fee schedule taking effect on July 1, 2021.

36. However, these changes never came to fruition.

37. Several amendments were proposed but all stalled in the Legislature.

**Michigan Court of Appeals Rules Section 3157 Cannot Be Applied Retroactively**

38. The Michigan Court of Appeals recently ruled in *Andary v USAA Casualty Ins Co*, No 356487, 2022 WL3692767 (Mich Ct App, August 25, 2022) that the fee schedule set forth in Section 3157 cannot be applied to accidents that took place before the amendments took effect because the Michigan Legislature did not include a "clear, direct, and unequivocal expression of intent to have subsections (7) and (10) apply retroactively." Id. at *8 (internal citations omitted).

39. The Court reasoned that:

> [U]nder the pre-amendment no-fault policies, [Plaintiffs] were entitled to reimbursement for 'reasonably necessary' services at the reasonable and customary rates charged by providers that rendered care for persons injured in motor vehicle accidents. Providers were paid without regard to fee schedules, and there was no cap on how many hours of attendant care could be provided by the injured person's family. If MCL 500.3157(7) is applied retroactively, however, reimbursement for services not compensable by Medicare will be reduced by at least 45 percent, despite being reasonably necessary for the injured party. The practical effect is that many providers will no longer be able to offer these services.

Id. At *8 (internal citations omitted)

40. Accordingly, the amendments to the No-Fault Act—in particular, the fee schedule under Section 3157—does not apply to Patient D.S. because her accident occurred before the effective date of the amendments to the No-Fault Act.

41. State Farm unequivocally relied upon and expressly cited Section 3157 as its defense in the EOBs issued to AmeriStaff for its charges.

42. State Farm previously paid for these services and it is undisputed that the reductions are due to the fee schedule in Section 3157—which has now been deemed to not apply to Patient D.S.

43. Therefore, AmeriStaff is entitled to payment of the full amount owed by State Farm because MCL 500.3157 cannot be applied retroactively to Patient D.S.

44. AmeriStaff is also entitled to injunctive relief. AmeriStaff alleges that continued application and enforcement of Section 3157 violates constitutional and other legal rights; if an injunction does not enjoin State Farm from enforcing Section 3157, AmeriStaff will be irreparably harmed; AmeriStaff has no adequate remedy at law to prevent State Farm from enforcing Section 3157; and if not enjoined by this Court, State Farm will continue to enforce Section 3157 in derogation of AmeriStaff's rights.

45. Accordingly, injunctive relief is appropriate in addition to money damages.

**COUNT I—VIOLATION OF THE MICHIGAN NO-FAULT ACT, MCL 500.3101,** *et. seq.*

46. AmeriStaff re-alleges and incorporates by reference each and every allegation as though fully set forth herein.

47. State Farm is the insurer responsible for payment of D.S.'s benefits pursuant to the Michigan No-Fault Act, M.C.L. 500.3101 of the No-Fault Act.

48. AmeriStaff's Patient D.S. is entitled to personal protection benefits through State Farm pursuant to the No-Fault Act, because her injuries were an "accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle." M.C.L. 500.3105.

49. By virtue of sustaining a bodily injury arising out of a motor vehicle accident, AmeriStaff's patient D.S. is entitled to receive No-Fault benefits for allowable expenses "consisting of all reasonable charges incurred for reasonably necessary products, services, and accommodations for [her] care, recovery, or rehabilitation." M.C.L. 500.3107(1).

50. AmeriStaff provided care and services to Patient D.S. in the form of home health aide care and nursing supervisory visits.

51. AmeriStaff provided these services with the expectation of payment from State Farm.

52. The care provided by AmeriStaff was reasonably medically necessary, as demonstrated by, *inter alia*, the prescriptions of his physicians.

53. The *Andary* decision mandates that the amended fee schedule not be applied to Patient E.B., and AmeriStaff's charges are reasonable and customary under the former version of M.C.L. 500.3157, which State Farm previously paid before the Amendment to the No-Fault Act.

54. AmeriStaff has regularly and properly submitted invoices and supporting documentation to State Farm demonstrating amounts incurred for the reasonably necessary products and services provided for its insureds' recovery, and rehabilitation but State Farm has failed to pay.

55. Payment by State Farm is more than thirty (30) days overdue.

56. Overdue benefits give rise to a rebuttable presumption of unreasonable refusal or undue delay under the No-Fault Act. Thus, AmeriStaff is entitled to penalty interest pursuant to M.C.L. 500.3142, because the benefits owed by State Farm are more than thirty days overdue.

57. State Farm has unreasonably refused to reimburse AmeriStaff for the care and services it provided. Thus, AmeriStaff is entitled to attorney fees pursuant to M.C.L. 500.3148.

### COUNT II—DECLARATORY JUDGMENT ACTION

58. AmeriStaff re-alleges and incorporates by reference each and every allegation as though fully set forth herein.

59. The *Andary* decision mandates that the amended fee schedule not be applied to Patient C.K., and AmeriStaff's charges are reasonable and customary under the former version of M.C.L. 500.3157—which State Farm previously paid.

60. Accordingly, AmeriStaff seeks a declaratory judgment that (i) the amended Section 3157 does not apply to Patient D.S. due to the *Andary* decision; and (ii) that its rates are reasonable and customary.

61. The declaratory judgment claim is ripe for judicial intervention because State Farm has taken the position in its written communications to AmeriStaff that it is relying upon M.C.L. 500.3157 as the reason for its partial payment of AmeriStaff's bills.

62. Accordingly, AmeriStaff seeks a declaratory judgment as set forth above.

### COUNT III—UNCONSTITUTIONAL TAKING IN VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS (in the alternative)

63. AmeriStaff re-alleges and incorporates by reference each and every allegation as though fully set forth herein.

64. The Takings Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const., Amend. V.

65. The Fifth Amendment is applicable to the states through the Fourteenth Amendment. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421 (1982).

66. Insurance companies are treated as state actors with respect to constitutional claims brought pursuant to the No-Fault Act because the insurance companies enforce and apply the statute:

> The No-Fault Act specifies the extent of coverage to be provided and the conditions of payment for insurance benefits... [and] provide[s] for the assignment of claims and risks. In effect, insurance companies are the instruments through which the Legislature carries out a scheme of general welfare. This legislation goes beyond a grant of a monopoly or an attempt to regulate a utility; there exists 'a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the (regulated entity) may be fairly treated as that of the State itself... Consequently due process protections under the Michigan and United State Constitutions (Const. 1963, art. I, § 17; U.S. Const. Amdt. XIV) are operative.

*Shavers v. Kelley*, 402 Mich. 554, 597 (1978) (*Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974); accord *Davey v. Detroit Auto. Inter-Insurance Exchange*, 414 Mich. 1, 3-4 (1982); *Pollock v. Frankenmuth Mut. Ins. Co.*, 79 Mich.App. 218, 222 (1977) (analyzing the constitutionality of the No-Fault Act under an equal protection claim brought by an insured against the insurer); *Wolford v. Travelers Ins. Co.*, 92 Mich.App. 600, 603-04 (1979) (analyzing the constitutionality of the No-Fault Act under an equal protection claim brought by an insured against the insurer); *Hubert v. Citizens Ins. Co. of America*, 88 Mich.App. 710, 713 (1979) (analyzing the constitutionality of the set-off provision of the No-Fault Act as applied to workers compensation in a claim brought by an injured party against the

insurer); *Smart v. Citizens' Mut. Ins. Co.*, 83 Mich.App. 30, 33 (1978) (holding on the constitutionality of a provision of the No-Fault Act in a claim by an insured against the insurer).

67. In fact, the Michigan Court of Appeals recently analyzed equal protection, contracts clause, and due process claims relating to the exact statute at issue in this case—M.C.L. 500.3157—and once again, consistent with the forty (40) plus years of authority cited above, permitted the constitutional claims to be brought directly against the two insurance company defendants because they are enforcing and applying the statute as an arm of the State. See *Andary, supra* (applying Contracts clause, Due Process, and Equal Protection claims against two insurance company defendants).

68. Both on its face and as applied in this case, the amended Sections 3157(7) and (8) are an unconstitutional confiscatory rate.

69. If the rate does not afford sufficient compensation, the State has taken the use of property without paying just compensation and so violated the Fifth and Fourteenth Amendments.

70. State Farm's prior defense to the alleged Takings clause and Due Process violations is that AmeriStaff's participation in the No-Fault system is merely "voluntary" so AmeriStaff can simply discharge its No-Fault patients and withdraw from participation in the market.

71. The United States Supreme Court has held as a matter of law that this defense is not meritorious. See *Horne v. Dep't of Agriculture*, 576 U.S. 350, 365- 366 (2015). ("The Government contends that the reserve requirement is not a taking because raisin growers voluntarily choose to participate in the raisin market. According to the Government, if raisin growers don't like it, they can 'plant different crops,' or 'sell their raisin-variety grapes as table grapes for use in juice or wine." . . . 'Let them sell wine' is probably not much more comforting to the raisin growers than similar retorts have been to others throughout history. In any event, the

Government is wrong as a matter of law. "In *Loretto*, we rejected the argument that the New York law was not a taking because a landlord could avoid the requirement by ceasing to be a landlord. We held instead that 'a landlord's ability to rent his property may not be conditioned on his forfeiting the right to compensation for a physical occupation.' ... property rights 'cannot be so easily manipulated.'") *Id.*; see also *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58 (1st Cir. 1997).

72. The Ninth Circuit, which previously applied the "voluntary participant" defense, has since overruled those cases. See *Sierra Medical Services Alliance, et al. v. Kent*, 883 F.3d 1216, 1224-25 (9th Cir. 2018) (rejecting the argument that "[b]ecause participation in Medicaid is voluntary, ... providers do not have a property interest in a particular reimbursement rate" and holding "voluntary participation in a market that is subject to regulation does not defeat a takings claim" since a medical provider has a "protectable property" interest in more than just the "reimbursement rate" it charges, and that its property interest also extends to an interest in its "equipment, wages, supplies, insurance, goodwill and ambulatory services and employment contracts, rather than the reimbursement rate per se") (citing *Horne*).

73. AmeriStaff has a protectable property interest in all aspects of its business from its goodwill, contracts, revenue, profits, and the like.

74. The amended Section 3157(7) arbitrarily reduces the amount of reimbursement that a healthcare provider can receive to 45% of what it charged as of January 1, 2019, regardless of the cost incurred to provide that service to its patient and regardless of whether these reduced reimbursements allow AmeriStaff to recover a constitutionally-protected rate of return on its investment.

75. A 45% reduction is a confiscatory rate.

76. The 45% reduction is arbitrary and discriminatory and demonstrably irrelevant to a legitimate purpose.

77. The absence of a mechanism to guarantee that AmeriStaff and other similarly-situated medical providers receive the opportunity to earn a constitutionally adequate rate of return bears no relation to any legitimate governmental purpose and is arbitrary, capricious and discriminatory.

78. Inadequate protections and procedures if the rate set in the Sections (7) and (8) does not allow for a fair return; there is no express procedure or appeal provided for in the statute.

79. AmeriStaff is entitled to injunctive relief AmeriStaff alleges that both on its face and as applied, Section 3157(7) and (8) violates its constitutional rights; if an injunction does not enjoin State Farm from enforcing these sections, AmeriStaff will be irreparably harmed; AmeriStaff has no adequate remedy at law to prevent State Farm from enforcing Section 3157; and if not enjoined by this Court, State Farm will continue to enforce Section 3157 in derogation of AmeriStaff's constitutional rights.

80. Accordingly, injunctive relief is appropriate.

## RELIEF REQUESTED

WHEREFORE, Ameristaff prays that, pursuant to MCL § 500.3101, *et. seq.*, this Court enter judgment in AmeriStaff's favor and against State Farm for the total amount due and owing to AmeriStaff for the services rendered to patients as set forth above, plus (1) No-Fault penalty interest pursuant to MCL § 500.3142, (2) No-Fault attorney fees and costs pursuant to MCL § 500.3148, (3) such other relief as justice and fairness require.

                        Respectfully submitted,

                        By: /s/ *Michael R. Dorfman*
                        Michael R. Dorfman (P60955)
                        Attorney for Plaintiff AmeriStaff
                        1938 Woodslee Drive
                        Troy, Michigan 48083
                        (248) 619-3681
                        *mdorfman@americaremedical.com*

Dated: September 25, 2022